UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA, et al.,      )
                                       )
                Plaintiffs,            )
                                       )
        v.                             )      No. 1:23-cv-00252-MPB-MJD
                                       )
REID PHYSICIAN ASSOCIATES, INC, et al.,)
                                       )
                Defendants.            )
                                       )
_____)
                                       )
SCOTT MASTORES,                        )
                                       )
                Relator.               )

**ORDER DENYING DEFENDANTS' MOTION TO STAY DISCOVERY**

Defendants Reid Physician Associates, Inc. and Reid Hospital and Health Care Services,

Inc., have filed a Motion to Stay Discovery pending rulings on their two Motions to Dismiss.

[Dkt. 68.]  As explained below, the Motion to Stay Discovery is **DENIED**.

**I. Background**

This is a *qui tam* action under the federal False Claims Act ("FCA") and the Indiana

Medicaid False Claims Act ("IMFCA").  [Dkt. 1.]  The United States of America and the State of

Indiana have declined to intervene, and the case has been unsealed.  [Dkts. 39, 40, & 41].

Relator Dr. Scott Mastores claims that Defendants have engaged in fraudulent billing

practices through their use of "billing codes that were not supported by the actual patient services

documentation and that reflected lengthier and/or more complex services than were actually

provided to patients."  [Dkt. 1 at ¶ 3.]  This practice was allegedly part of a scheme to increase

revenue without increasing "patient traffic," and Defendants allegedly perpetrated this scheme by

imposing performance objectives and compensation packages that were tied to coding levels. *Id.* at ¶ 5. Relator claims to have direct knowledge of these practices by way of his employment with Defendants, who allegedly terminated him for his refusal to engage in what he believed to be fraudulent billing practices. *Id.* at ¶¶ 4, 6. He provides 12 examples of what, in his opinion, are fraudulent charges made by Defendants. *Id.* at ¶ 90. He also points to publicly available data sets belonging to the Centers for Medicare and Medicaid Services that he claims show proof of Defendants' practice of fraudulent billing. *Id.* at ¶¶ 92-103.

Defendants' first motion to dismiss argues that the Complaint fails to meet the heightened pleading standard for fraud under Rule 9(b) and fails to state a claim under Rule 12(b)(6). [Dkt. 63.] Their Rule 12(b)(6) argument contends that Relator alleges, at most, gross negligence, which is insufficient to meet the FCA's scienter element, that Relator's opinion about the appropriateness of billing codes shows disagreement rather than falsity, and that the exhibits attached to the Complaint show that the billing codes were appropriate for the care provided during those appointments. *Id.* at 5. Defendants provide point-by-point counterarguments with respect to each of the 12 examples of fraudulent billing that Relator sets forth in the Complaint and argues that without a particular allegation of a false claim, the Complaint fails to meet the heightened "who, what, where, when, and how" pleading standard for fraud under Rule 9(b). *Id.* at 22-33. Defendants also argue that only 2 of the 12 alleged examples of fraud actually involve claims to Government payers. *Id.* at 8. Finally, Defendants argue that Relator's reliance on data sets that purportedly provide statistical evidence of fraud in the aggregate is impermissible because these data sets are publicly available and because Relator is not an "original source."[1]

---

[1] *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 916 (7th Cir. 2009) ("The original-source exception permits jurisdiction over an FCA action even if the relator's lawsuit is based upon publicly disclosed information provided that the relator is 'an original source of the information.' The FCA defines an 'original source' as someone 'who has direct and independent knowledge of the information on which

Defendants have also filed a Motion to Dismiss for lack of jurisdiction and lack of standing. Defendants' argument arises principally from Justice Thomas' dissenting opinion in *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 425 (2023). After acknowledging "the long historical pedigree of *qui tam* suits, including the fact that the First Congress passed a handful of *qui tam* statutes," Justice Thomas outlined certain constitutional concerns with respect to *qui tam* litigation, such as whether Article II "permit[s] private relators to represent the United States' interests in FCA suits" and whether Congress may "effect partial assignments of the United States' damages claims[.]" *Id.* at 450, 451 (Thomas, J., dissenting). Justice Thomas did not make any conclusions on these constitutional issues, but he noted that "these are complex questions, which I would leave for the parties and the court below to consider after resolving the statutory issues that have been the focus of this case up to now." *Id.* at 452; *see also id.* at 442 (Kavanaugh, J., concurring, joined by Barrett, J.) ("I join the Court's opinion in full. I add only that I agree with Justice Thomas that '[t]here are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation.'").[2]

Defendants rely on Justice Thomas' constitutional concerns and argue that the FCA's *qui tam* provision is unconstitutional because it "divests the Executive of exclusive control over federal enforcement litigation" and "allows an unappointed private party to litigate on behalf of the Government." [Dkt. 66 at 10, 18.] They seek to distinguish the FCA's *qui tam* provision

the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.'") (internal citations omitted).

[2] The "main issue" in *Polansky* was not these constitutional concerns but instead "whether the Government, if it has declined to intervene during the seal period [of an FCA *qui tam* action], retains . . . the right to dismiss a *qui tam* action over the relator's objection." Polansky, 599 U.S. at 426. The Court ultimately held that "[t]he Government may move to dismiss an FCA action under Subparagraph (2)(A) whenever it has intervened—whether during the seal period or later on." *Id.* at 438.

with early *qui tam* statutes, such as those passed into law by the First Congress. *Id.* at 30-36. They also argue that the Relator in this action "did not suffer an injury in fact due to the alleged false claims identified in the Complaint" because the injury he asserts, as the injury that every relator asserts under the FCA, "is exclusively to the government." *Id.* at 10, 16 (quoting *Polansky*, 599 U.S. at 425). Defendants acknowledge that their standing argument directly conflicts with existing Supreme Court precedent, which this Court must follow in ruling on their Motion to Dismiss, and that other arguments set forth in their motion have been rejected by every circuit court that has considered them. [Dkt. 66 at 10, 16.] Nevertheless, they make these arguments "with full understanding, not that [their standing argument] is futile, but that it is a question reasonably preserved for appeal[.]" *Id.* at 16.

## II. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A court may stay a matter through an exercise of its inherent authority to manage litigation or through its authority under Federal Rule of Civil Procedure 26(c). *See, e.g.*, *E.E.O.C. v. Fair Oaks Dairy Farms*, LLC, 2012 WL 3138108, at *2 (N.D. Ind. Aug. 1, 2012). "Courts disfavor stays of discovery because they bring resolution of the dispute to a standstill." *Red Barn Motors, Inc. v. Cox Enterprises, Inc.*, 2016 WL 1731328, at *3 (S.D. Ind. May 2, 2016) (internal quotations omitted). A party has no right to a stay, and the party seeking a stay bears the burden of proving that the Court should exercise its discretion in staying the case. *Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009).

"Filing a motion to dismiss does not automatically stay discovery," and as a general matter, "a stay of discovery is warranted only when a party raises a potentially dispositive threshold issue such [as] standing, jurisdiction, or qualified immunity." *Red Barn Motors, Inc. v. Cox Enters., Inc.*, 2016 WL 1731328, at *2-3 (S.D. Ind. May 2, 2016). Courts do not routinely stay discovery simply because a defendant has filed a motion to dismiss, and moving to dismiss a case does not automatically relieve the parties of their obligation to comply with case management deadlines. *See*, *e.g.*, *Gookins v. County Materials Corp.*, 2019 WL 3282088 at *1 (S.D. Ind. July 18, 2019) (concluding that it is not appropriate "for all discovery to grind to a halt" until after the motion to dismiss is ruled upon because the defendants "have not met their burden of persuading the Court that the chance of their motion to dismiss being granted in its entirety outweighs the interest in moving this matter forward").

### III. Discussion

Defendants' first motion to dismiss, which argues that the Complaint does not meet the heightened pleading standard for fraud under Rule 9(b) or state a claim under Rule 12(b)(6), does not raise threshold issues that might warrant a stay of discovery, such as standing, jurisdiction, immunity, or arbitrability. [Dkt. 63.] Defendants argue that one purpose of the heightened pleading standard in Rule 9(b) is to prevent costly fishing expeditions, and that a relator in an FCA lawsuit must make "a more extensive investigation before" filing a complaint than the typical plaintiff and may not "make vague claims of fraud" only to conduct discovery "in the hope of uncovering enough specifics to adequately plead a case." [Dkt. 68-1 at 3-4 (quoting *United States v. Supervalu, Inc.*, 2016 WL 3906570, at *1 (C.D. Ill. July 14, 2016)).]

The Court is not persuaded that Defendants' first motion to dismiss warrants a stay of discovery. Defendants' argument about the heightened pleading standard for fraud and a relator's

pre-filing investigation obligations are well taken.  But there is no bright-line rule that discovery must be stayed whenever an FCA defendant raises a Rule 9(b) challenge; instead, the Court must balance the likelihood that the motion to dismiss will be granted in its entirety against the harm of allowing the lawsuit to grind to a halt until that motion is resolved.  *See Gookins*, 2019 WL 3282088 at *1.

The Court has reviewed the record and finds that Defendants' success on the first motion to dismiss is not a foregone conclusion.  This is not a case where the Complaint makes no attempt or makes a clearly insufficient attempt to plead fraud with particularity.  Defendants acknowledge that Relator has presented at least two specific examples of what he believes are fraudulent claims to a Government payer.  [Dkt. 64 at 8.]  They argue that Relator's belief in this respect merely shows a non-actionable disagreement with Defendants' billing practices, but the precedent they cite for this proposition is in some respects distinguishable.  For example, they cite *United States ex rel. Geschrey v. Generations Healthcare LLC*, 922 F. Supp. 2d 695 (N.D. Ill. 2012), which they characterize as "entirely on point," in which the court ruled that a social worker's opinion that a patient was not appropriate for hospice care, without more, is insufficient to prove that the physician's hospice certification was fraudulent because the social worker's opinion merely showed disagreement with the physician's medical judgment.  The other cases that Defendants cite also involved non-physician relators alleging fraud by experienced or more experienced healthcare providers.  *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770 (7th Cir. 2016)  (nurse); *United States v. UnitedHealthcare Insurance Company*, 2018 WL 2933674, at *3 (N.D. Ill. June 12, 2018)  (patient).  Here, by contrast, Relator is a physician, and his medical opinion about issues within his area of expertise may well be entitled to more weight at the pleading stage than an opinion articulated by a non-

physician relator.  Further, though *Presser* cautions, in dicta, that a disgruntled former employee may be motivated by bias in bringing an FCA action, *Presser*, 836 F.3d at 780, Relator's status as a terminated former employee does not render his medical opinion with respect to Defendants' billing practices *per se* invalid of otherwise unworthy of any consideration.

The Court emphasizes that it makes no ruling, at this time, about the ultimate merits of Defendants' first motion to dismiss.  The motion raises complex issues that will require careful analysis once it is fully briefed and ripe for the Court's review.  At this time, the Court merely rules that the likelihood of Defendants' success on their first motion dismiss does not warrant a stay of discovery in the instant case.

Defendants all but concede that their second motion to dismiss, which does raise threshold issues of jurisdiction and standing, will be denied.  Defendants raise constitutional challenges to a longstanding cause of action with deep historical roots in American law.  Ruling in their favor in this forum may be impossible because, as Defendants point out, some of their arguments conflict with binding precedent, and others have been rejected by every circuit court that has considered them.  [Dkt. 66 at 10, 16.]  This does not mean that Defendants' argument is without merit.  After all, three Supreme Court Justices have expressed concern that the FCA's *qui tam* provision raises "complex questions" of constitutional interpretation.  But Defendants' victory, if it comes at all, may well be years down the road, and the Court will not delay these proceedings indefinitely upon the possibility that the Supreme Court may one day strike down a federal statute that remains, at this time, in full effect.

## IV. Conclusion

In sum, Defendants' first motion to dismiss does not raise threshold issues warranting a stay of discovery, and their success on that motion is not a foregone conclusion.  Defendants'

7

second motion to dismiss does raise threshold issues but is unlikely to succeed in this forum.

Accordingly, the Court exercising its discretion and inherent authority to manage this litigation

hereby **DENIES** Defendants' Motion to Stay Discovery, [dkt. 68].

SO ORDERED.

Dated:  21 MAY 2026

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

8