UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,
STATE OF INDIANA,

Plaintiffs,

v.

REID PHYSICIAN ASSOCIATES, INC,
REID HOSPITAL AND HEALTH CARE SERVICES, INC,

Defendants.

SCOTT MASTORES,

Relator.

No. 1:23-cv-00252-MPB-MJD

**ORDER GRANTING RELATOR'S MOTION TO COMPEL**

This matter is before the Court on Relator's motion to compel Defendants to produce documents "responsive to Relator's First Request for Production of Documents and a revised privilege log." [Dkt. 128.] For the reasons set forth below, the motion is **GRANTED**.

## I. Background

This a *qui tam* action under the federal False Claims Act ("FCA") and the Indiana Medicaid False Claims Act ("IMFCA"). [Dkt. 1.] Relator is a former employee of Defendants, and he alleges that they have engaged in fraudulent billing practices through their use of "billing codes that were not supported by the actual patient services documentation and that reflected

lengthier and/or more complex services than were actually provided to patients." [Dkt. 1 at ¶ 3.] This practice was allegedly part of a scheme to increase revenue without increasing "patient traffic," and Defendants allegedly perpetrated this scheme by imposing performance objectives and compensation packages that were tied to coding levels. *Id.* at ¶ 5. Relator claims to have direct knowledge of these practices by way of his employment with Defendants, who allegedly terminated him for his refusal to engage in what he believed to be fraudulent billing practices. *Id.* at ¶¶ 4, 6. He provides 12 examples of what, in his opinion, are fraudulent charges made by Defendants. *Id.* at ¶ 90. He also points to publicly available data sets belonging to the Centers for Medicare and Medicaid Services that he claims show proof of Defendants' practice of fraudulent billing. *Id.* at ¶¶ 92–103.

Relator has served his first set of requests for production of documents ("RFP") on Defendants. [Dkt. 129-1.] Relator asserts that Defendant provided an unsatisfactory initial production of documents and an unsatisfactory privilege log, resulting in Relator sending a letter outlining the alleged deficiencies. [Dkts. 129, 129-2, 129-3.] Defendants then supplemented their production and provided an updated privilege log, and the parties met and conferred about Defendants' responses and the issues raised in Relator's deficiency letter. [Dkt. 129 at 1–2.] The parties subsequently appeared before the Court for a discovery conference with the undersigned, who authorized Relator to file a motion to compel Defendants to provide more complete responses to Relator's RFPs. [Dkt. 125.] After the conference, Defendants further supplemented their production of documents and provided another updated privilege log. [Dkts. 129 at 2, 129-4 (Defendants' updated privilege log).] Relator, still not satisfied with Defendant's production and privilege log, then filed the instant motion to compel.

After complete briefing on Relator's motion to compel, Relator has narrowed his requests for relief to the following:

1. Order Defendants to "produce all documents responsive to Request [for Production] Nos. 1 through 13 for the full Relevant Period (January 1, 2013 through February 8, 2023), without limitation to particular facilities or providers other than the Requests' own stated limitations," [Dkt. 137 at 13];
2. Order Defendants to "produce without redaction every document withheld or redacted as 'Confidential,' including Reid_000184 and Reid_000281," *id.*;
3. Order Defendants to "produce each civil investigative demand or other request received from the United States or the State of Indiana, all documents and data produced in response, and the related transmittal correspondence, and identify on Defendants' Privilege Log any documents withheld," *id.*; and
4. Order Defendants to "serve an updated Privilege Log that complies with Rule 26(b)(5)(A), produce any document for which a sufficient log entry has not been provided, and either produce the NOC Finance/Operations Committee minutes or submit them for *in-camera* review," *id.*

The Court will address the issues raised by each request for relief in turn.

## II. Discussion

### A. Scope limitations in Defendant's Responses to Relator's RFPs

Defendants argue that Relator's RFP Nos. 1–12 "improperly seeks system-wide discovery from numerous locations where Relator did not work and did not observe the alleged conduct" in the Complaint. [Dkt. 129-2 at 5.] Thus, a common objection is asserted in Defendant's Responses to Relator's RFP Nos. 1–12: The Request is "overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks system-wide discovery

unrelated to the specific allegations pleaded in the Complaint" because Relator "has not alleged particularized facts showing fraudulent claims, improper billing practices, and other misconduct at" facilities other than Reid Urgent Care – Richmond or concerning physicians other than Jan G. Cornell, M.D.; thus, Relator "should not be entitled to documents and information concerning facilities or physicians against whom he has not made a single allegation against." *E.g.*, [Dkt. 129-2 at 7.] Additionally, all but Defendants' Responses to Relator's RFP Nos. 1 & 9 limit production of responsive documents to "records for providers providing care at Urgent Care centers and billing less than $1,000.00 during the relevant time period (including both public and private payors)." *E.g.*, *id.* Relator represents that their review of Defendants' document production revealed that the scope limitation concerning Relator's personal knowledge also applies to Defendants' production in response to RFP No. 13. [Dkt. 129 at 8.]

Defendants argue these scope limitations are appropriate because Relator's "allegations are grounded on urgent care providers whose compensation is primarily based on their E/M coding, and the allegations that the Defendants' compensation scheme encouraged upcoding of E/M visits, while most Reid providers neither work in urgent care facilities nor have compensation based primarily upon their E/M coding." [Dkt. 136 at 5–6.] They argue that limiting Relator's discovery requests to urgent care facilities and providers and to information and documents within Relator's actual knowledge and experience ensures that discovery will "hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become[s] the centerpiece of litigation strategy." *Id.* at 6; *U.S. ex rel. McCartor v. Rolls-Royce Corp.*, 2013 WL 5348536, at *7 (S.D. Ind. Sept. 24, 2013).

"[T]he scope of discovery should be broad in order to aid in the search for truth." *Kodish v. Oakbrook Terrace Fore Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Limiting

discovery to Relator's actual knowledge and experience is inappropriate because, as this Court has explained, "it would be incongruent to use public disclosure/original source statutory concepts to regulate discovery" in *qui tam* cases. *United States ex rel. Conroy v. Select Medical Corp.*, 307 F. Supp. 3d 896, 902 (S.D. Ind. 2018). Nonetheless, this Court and others, in order to prevent undue burden on the defendant, have limited the scope of discovery in *qui tam* cases where the plaintiff has plausibly alleged fraud as to only certain facilities or geographical locations. *See id.* at 903–05 (limiting the scope of discovery to information relating to a single hospital in a system with 100+ facilities where "the descriptions in the complaint about [the defendants] corporate policy plausibly allege[d] that it played a role in the submission of false or fraudulent claims for patients" at only that hospital and "the government's pre-intervention decision investigation focused only on" that hospital); *United States v. Novo Nordisk, Inc.*, 2023 WL 11843038, at *2–3 (W.D. Okla. Mar. 20, 2023) (limiting the scope of discovery—after the Court ruled on a motion to dismiss—to information relevant to Plaintiff's remaining claims, which all rested on a single representative example of alleged fraud in one state); *United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 719 F.3d 31, 39 (1st Cir. 2013) (affirming the district court's limitation of the scope of discovery to "those allegations . . . which satisfied Rule 9(b)'s particularity requirement"). Thus, put simply, the Court's inquiry is whether Relator's **allegations** support system-wide discovery or discovery limited to some subset of the Reid Health System.

Relator has pleaded that he "noted billing codes for patients treated by other Reid Health Urgent Care providers and by **other** RPA providers that appeared to be inappropriate under medical service coding requirements." [Dkt. 1 ¶ 87] (emphasis added). He supports his allegations with a statistical analysis of system-wide data, including "[t]he relative billing

percentages for **all** Reid Health providers submitting claims under codes 99213 and 99214." *Id.* ¶¶ 92–103 (emphasis added). And Relator alleges that Reid executives who held system-wide authority were privy to or engaged in the alleged scheme to upcode. *Id.* ¶¶ 60–62, 66–68, 70–74, 77–86; *cf.* *United States ex rel. Conroy*, 307 F. Supp. 3d at 904 (limiting the scope of discovery in a *qui tam* case where "[t]he complaint [did] not make any specific allegations about any other specific Chief Medical Officer or other named official at any other LTACH who allegedly controlled upcoding or short-term outliers at their hospitals in a way knowingly to defraud the Medicare program"). Further, though Defendants note that their pending motion to dismiss shows that the majority of Relator's representative examples are unrelated to any False Claim Act allegation, there has been no determination by this Court that Relator has plead with particularity false claims originating from only certain facilities within the Reid system. Defendants' practice of limiting their production of documents and information to those relating to a single Reid facility or physician is therefore improper.

Additionally, Defendants have made no showing as to why system-wide discovery would be unduly burdensome. Defendants argue that the burden imposed by Relator's requests "would encompass vast amounts of information relating to entirely different specialties, clinical settings, billing practice, and reimbursement methodologies wholly unrelated to Relator's urgent care E/M coding claim," [Dkt. 136 at 11], but all Defendants have provided to support this assertion is a list of their facilities [Dkt. 136-1]. Defendants do not say, for example, whether or not data for their facilities is centrally stored (and thus more or less easily accessible), or approximately how many different unrelated specialties, clinical settings, billing practices, or reimbursement methodologies could be implicated in crafting responsive production.

Defendants' failure to provide specific details as to how production responsive to RFPs No. 1–12 would be unduly burdensome is fatal to their objection, as a party objecting based on undue burden "must show with specificity that the discovery requests [at] issue are objectionable," which "typically requires affidavits or other evidence supporting a party's assertions of burden." *Whole Woman's Health Alliance v. Hill*, 2019 WL 10886889, at *3 (S.D. Ind. Oct. 7, 2019). An objecting party's failure to demonstrate undue burden with articulable facts to support the claimed burden constitutes a waiver of that objection. *See Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) (failure to make specific legitimate objections to discovery requests may result in the court deeming the objections waived); *Annie Oakley Enterprises Inc. v. Amazon.com, Inc.*, 2020 WL 4571742, at *5 (S.D. Ind. Aug. 7, 2020) (finding waiver of the plaintiff's "overly broad and unduly burdensome" objections where they failed to adequately explain their objections and make the necessary showing to support them). Thus, the Court sees no reason to place limitations on the scope of Relator's RFPs.

**B. Redaction and withholding of documents labeled "Confidential" or "Peer Review"**

Defendants seem to have withheld or redacted certain documents based on confidentiality or "peer review" privilege. *See* [Dkt. 129-4 at 2.] As explained below, that is not appropriate in this case, and those documents must be produced and not redacted.

As for asserted protections based on confidentiality: Defendants have clarified that the "confidential" indicator on their privilege log is employed as part of their "overall objection to the scope of Relator's discovery requests." [Dkt. 136 at 16–17.] However, Defendants also state that "[s]hould this court order broad, system-wide discovery in this case, those documents may

be produced." *Id.* at 17. This Court is ordering system-wide discovery in this case, so those documents shall be produced.

As for Defendants' asserted "peer review" privilege: Neither the Seventh Circuit nor the Supreme Court recognizes a federal peer-review privilege. *Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018); *Univ. of Penn. v. EEOC*, 493 U.S. 182, 195 (1990). But Indiana law does recognize a privilege for proceedings of, and communications to, peer review committees. *See* Ind. Code § 34-30-15-1(a)–(c) (providing that "[a]ll proceedings of a peer review committee are confidential"; "[a]ll communications to a peer review committee" are privileged; and that the records and determinations of a peer review committee are not be revealed by a committee's personnel or participants).

Defendants claim peer review protections over minutes of the NOC Finance & Operations Committee and Relator's peer review file. [Dkts. 129-4 at 2; 136 at 16.] Because this case involves claims under both federal and state law, Indiana's medical peer review privilege could apply to those documents, at least insomuch as it pertains to Relator's state law claims. *See* Fed. R. Evid. 501 (providing that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). In cases involving claims under both federal and state law, however, "the Seventh Circuit has held that federal privilege law governs 'notwithstanding the presence of a pendent state claim.' " *Mattice v. Mem'l Hosp. of South Bend*, 203 F.R.D. 381, 384 (N.D. Ind. 2001) (citing *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981)). Nonetheless, "federal courts should, as a matter of reason, experience, and comity, consider the law of the state in which the case arises, and recognize that state's evidentiary privileges 'where this can be accomplished at no substantial cost to federal substantive and procedural policy.' " *Id.* (citing *Mem'l Hosp.*, 664 F.2d at 1061).

"Deciding whether to recognize an evidentiary privilege 'requires a balancing of competing policies.' " *Mattice*, 203 F.R.D. at 385 (quoting *EEOC v. Univ. of Notre Dame Du Lac*, 715 F.2d 331, 335 (7th Cir. 1983)). "The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Mem'l Hosp.*, 664 F.2d at 1061–62 (cleaned up). "However, when the federal interest in a case is important and the peer review evidence is central to the claims at issue, application of a peer review privilege may not be appropriate." *Bonzani v. Goshen Health Sys. Inc.*, 2022 WL 24388048, at *4 (N.D. Ind. July 5, 2022).

"The purpose of Indiana's medical peer review privilege is 'to foster an effective review of medical care,' *Mulder v. Vankersen*, 637 N.E.2d 1335, 1338 (Ind. Ct. App. 1994), and to 'ensure Indiana citizens of the highest quality of medical care, while protecting them from incompetent, unqualified medical treatment.' *Walton v. Jennings Community Hospital, Inc.*, 875 F.2d 1317, 1322 (7th Cir. 1989)." *Mattice*, 203 F.R.D. at 384. Conversely, Relator has brought this action against Defendants alleging, in part, that Defendants knowingly presented false claims to agents of the State of Indiana under Indiana's Medicaid program and to agents of the United States under the federal Medicare and TRICARE programs, and that such claims were false because they were not supported by information sufficient to establish that the services were billed correctly and "did not reflect the services actually rendered, including the complexity of the medical decision making necessary to provide the services." [Dkt. 1 ¶¶ 105, 108.] Submitting false claims unsupported by the medical services and decisions actually rendered is antithetical to any notation of effective review of medical care or protection from incompetent, unqualified medical treatment. And the need for truth in a case involving allegations of fraud

against the United States and the State of Indiana is immense. Therefore, the Court finds that applying Indiana's medical peer review privilege in this case is not appropriate because it would not further or protect the policy underlying the privilege.

Accordingly, Defendants shall produce any documents redacted or withheld pursuant to an assertion of "confidentiality" or peer review privilege, in their unredacted form.

**C. Documents related to investigations by the United States or the State of Indiana**

Defendant is also withholding documents responsive to RFP No. 14. [Dkt. 129-2 at 21.] That request seeks

> All Documents provided to the United States or the State of Indiana or their representatives related to the facts alleged and/or claims asserted in Relator's Complaint, including but not limited to Documents provided in response to any Civil Investigative Demand or other written verbal request as well as Documents prepared for the purpose of providing information in response to any Civil Investigative Demand or other written or verbal request.

[Dkt. 129-2 at 20–21.]

Defendants object to RFP No. 14 "to the extent it seeks Documents that were 'prepared for the purpose of providing information' in response to a Civil Investigative Demand" or "Documents or Communications protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection." *Id.* at 21. Defendants contend that "[a]s framed, the Request is overbroad and improperly seeks internal Documents and Communications created in connection with Reid's response to a government inquiry." *Id.*

Defendants also argue, in their response to Relator's motion to compel, that RFP No. 14 is not relevant to the claims pleaded or issues in dispute nor proportional to the needs of the case. [Dkt. 136 at 13–15.] But objections raised for the first time in a response brief to a motion to compel are not timely and are therefore waived, so the Court will not consider those objections. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 366 (N.D. Ill. 2005) ("Here, as plaintiffs

point out in their reply brief, the Noranda defendants raise their 'cumulative and duplicative' objection for the first time in their Response [to plaintiff's motion to compel]. The objection is thus waived."). Rather, the Court will only focus on the objections asserted in Defendants' response to RFP No. 14.

First, the Court does not agree with Defendants' framing of RFP No. 14. As written, RFP No. 14 is limited to "All Documents provided to the United States or the State of Indiana or their representatives related to the facts alleged and/or claims asserted in Relator's Complaint . . . ." The categories of documents listed after the word "including" are merely enumerations of documents included within the scope of the request; however, the only actually responsive documents are those actually "provided to the United States or the State of Indiana."

The United States and the State of Indiana sent civil investigative demands and/or other requests to Defendants as a direct result of this case being filed. Therefore, the United States and the State of Indiana stood in an adversarial position to Defendants when Defendants produced documents responsive to the United States and the State of Indiana's requests. Defendants are in possession of the governments' requests and have not suggested that the scope of the information sought by those requests exceeds the scope of the claims and defenses in this case. Further, Defendants have not alleged that they produced the documents to the United States or the State of Indiana pursuant to some confidentiality agreement. Accordingly, the attorney-client privilege and work product protection have been waived as to any documents responsive to RFP No. 14. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 232–36 (2nd Cir. 1993) (finding waiver of work product protection as to a civil class action for a memorandum voluntarily disclosed to the SEC in an antecedent investigation); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)

("Knowing disclosure to a third party almost invariably surrenders the [attorney-client] privilege with respect to the world at large; selective disclosure is not an option.").

**D. Defendants' Privilege Log**

Finally, Relator takes issue with Defendants' privilege log. *See* [Dkt. 129-4 (Defendants' privilege log)]. He argues that the privilege log fails "to describe the withheld material in a manner that permits the claim [of privilege] to be assessed as required by Rule 26(b)(5(A)." [Dkt. 137 at 11.] Defendants, for their part, represent that they have provided Relator with an updated privilege log after the instant motion to compel was filed, and that this updated privilege log "contains more robust descriptions of documents and identities of authors . . . ." [Dkt. 136 at 15.] Defendants, however, did not provide the Court with a copy of this updated privilege log, so the Court must proceed with its analysis using the version provided by Relator.

Rule 26(b)(5)(A) requires a party withholding discoverable but privileged information to expressly claim the privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "Compliance with Rule 26(b)(5)(A) is not optional," *Rossman v. EN Eng'g, LLC*, 335 F.R.D. 171, 172 (N.D. Ill. 2020), and "failure to serve [an adequate privilege log] may result in a waiver of any protection from discovery." *Tuson v. Edwards*, 2026 WL 1949388, at *3 (S.D. Ill. July 6, 2026) (cleaned up).

There is "clear, well-settled law governing the required content of privilege logs in this Circuit," *Novelty, Inc.*, 265 F.R.D. at 380: Privilege logs must contain document-by-document descriptions that generally include: "(1) the name and job title or capacity of the author(s)/originator(s); (2) the names of all person(s) who received the document or a copy of it

and their affiliation (if any) with the producing party; (3) a general description of the document by type (*e.g.*, letter, memorandum, report); (4) the date of the document; and (5) a general description of the subject matter of the document." *In re Bridgestone/Firestone, Inc., ATX, ATX II*, 129 F. Supp. 2d 1207, 1218–19 (S.D. Ind. 2001). And, most importantly, "[a] proper privilege log requires a document-by-document description of the privilege asserted **and the facts supporting it**." *Novelty, Inc.*, 265 F.R.D. at 380 (emphasis added).

Defendants' privilege log does not meet the standards above. A cross-section of Defendants' privilege log is provided below:

| Date | Num Pages | Ext. | Description | Filename | Privilege | Author | Produced To |
|---|---|---|---|---|---|---|---|
| 07/23/15 | 8 | pdf | Contract Committee Agenda | 2301272_NOC Contract Sub-Committee Informational Packet 7-23-15.pdf | Attorney-Client | Unknown | n/a |
| 2016 | 1 | xlxs | 2016 Budget Provider Volumes, Charges & Compensation | RPA BUD 2016 Provider detail vol, chrgs & comp Revised for Wellness 111115.xlsx | Redacted: Confidential | Unknown | Reid_000184 |
| 07/23/19 | 6 | docx | NOC Finance/Operations Committee Minutes | 07.23.19 NOC Finance Operations Minutes - Confidential Draft.docx | Peer Review | Unknown | n/a |
| 2020 | 36 | pdf | Summary of RHPA Compliance Audit Memos – 4th Quarter 2020 | 4 C 2 4Q2020 SUMRHPA REVISED.pdf | Redacted: Confidential | Unknown | Reid_000129 |

Defendants' privilege log, when reviewed against the standards above, is deficient in several ways: (1) it contains no information as to the intended audience or recipients of the documents; (2) the descriptions of the documents are not sufficient for understanding their subject matter; and (3) no factual information is provided to support the asserted privileges.

Defendants' omissions and errors are not trivial. For example, Defendants have asserted the attorney-client privilege over a Contract Committee Agenda, but their privilege log does not show whether an attorney was even involved in the creation of the agenda, much less whether legal advice was provided when drafting the agenda. *See U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (laying out the test for attorney-client privilege, which requires, *inter alia*, that "legal advice is sought . . . from a professional legal adviser in his capacity as such," and noting that "[t]he party seeking to invoke the privilege bears the burden of proving all of its essential elements). And, as mentioned in the previous section, Defendants admit to asserting a non-existent privilege in order to implement their goal of improperly limiting the scope of discovery. Further, Relator points out that Defendants did not identify any documents on their privilege log that would have been responsive to RFP No. 14 (as framed by Defendants in their response) but were allegedly withheld as privileged. [Dkt. 129 at 8.] Altogether, the Court finds that Defendants' conduct regarding asserting privileges displays bad faith and, accordingly, that Defendants have waived their asserted privileges in the documents shown at Docket No. 129-4.

## III. Conclusion

For the reasons set forth above, Relator's motion to compel [Dkt. 128] is **GRANTED** and Defendants' objections to the discovery requests at issue are overruled for the reasons set forth above. Within **fourteen days** of the date of this Order, Defendants shall (1) produce all nonprivileged documents responsive to Relator's RFP Nos. 1–14, without limitation in scope as to facility, physician, or billing amount; (2) produce all documents on the privilege log reflected on Docket No. 129-4, unredacted, including documents that have previously been withheld or redacted based on "confidentiality" or "peer review" privilege; and (3) serve Relator with an

updated privilege log (not including documents for which privilege has been waived per this Order) with information sufficient to comply with Fed. R. Civ. P. 26(b)(5)(A).

SO ORDERED.

Dated: 28 OCT 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.